# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

```
===============================
                               :
AUCTUS FUND, LLC,              :
                               :
        Plaintiff,             :
                               :
        v.                     :      Civil Action No. _____
                               :
SOOUM CORPORATION,             :
WILLIAM WESTBROOK, AND         :
TERENCE BYRNE,                 :
                               :
        Defendants.            :
                               :
===============================
```

## COMPLAINT AND DEMAND FOR JURY TRIAL

### I. INTRODUCTION

1.      The Plaintiff, Auctus Fund, LLC, (hereinafter "Auctus" or the "Fund"), respectfully submits its Complaint and Demand for Jury Trial (hereinafter the "Amended Complaint") against the Defendants, SoOum, Corporation, (hereinafter the "Company" or "SOUM"), William Westbrook, (hereinafter "Mr. Westbrook") and Terence Byrne (hereinafter "Mr. Byrne") (collectively herein the "Defendants") in the above-captioned action.  The Plaintiff's allegations, as set out herein, are asserted for injunctive and equitable relief, and for damages, punitive damages, costs and attorney's fees and arising from, and resulting from the Defendants' violations of the following:

      a)      Section 10(b) of the Securities Exchange Act of 1934, *as amended* (hereinafter the "Exchange Act"), 15 U.S.C. §78j(b), and Rule 10b-5 promulgated thereunder, 17 C.F.R. §240.10b-5;

b)      Massachusetts Uniform Securities Act, M.G.L. c.110A, §§ 101, *et seq.*, *as amended* (hereinafter the "Uniform Securities Act");

c)      breach of contract;

d)      breach of implied covenant of good faith and fair dealing;

e)      unjust enrichment;

f)      breach of fiduciary duty;

g)      fraud and deceit;

h)      negligent misrepresentation; and/or

i)      the Massachusetts Consumer Protection Act, M.G.L. c. 93, §§ 2 and 11.

2.      The Plaintiff further alleges that, as a result and as caused by the Defendants' breaches, actions, omissions, policies, practices, and/or courses of conduct, Auctus has suffered irreparable harm to its business and reputation in the investment industry, damages from the Defendants' coercion, duress, and unfair and deceptive anti-competitive acts, causing lost revenue, lost profits and prospective business, together with its injuries and damages.

3.      The Plaintiff respectfully requests that its causes of action against the Defendants proceed to a trial by jury, that judgment be entered on all Counts against the Defendants and that Auctus be awarded its compensatory damages and losses, costs, interest, plus multiple and/or punitive damages, attorneys' fees, and grant, order and enter temporary, preliminary and permanent injunctive and equitable relief, and grant, order and enter declaratory relief, and any such other relief as this Honorable Court deems just and appropriate.

## II. **PARTIES**

4.      The Plaintiff, Auctus Fund, LLC is a duly organized Delaware limited liability company with its principal place of business located at 545 Boylston Street, 2nd Floor, Boston, Massachusetts 02116.

5.      Upon information and belief, the Defendant, SoOum, Corporation, is a Minnesota corporation, having its principal place of business located at 590 Madison Avenue, Suite 1800, New York, New York 10022.

6.      Upon information and belief, the Defendant William Westbrook, Chief Executive Officer of SoOum, Corp., is a resident of the State of Arizona.

7.      Upon information and belief, the Defendant Terence Byrne, Chief Financial Officer of SoOum, Corp., is a resident of the State of New York.

## III. **JURISDICTION AND VENUE**

8.      The Plaintiff asserts that this Honorable Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331, and under the Securities Act of 1933, *as amended*, 15 U.S.C. §§ 77a, *et seq.* (hereinafter the "Securities Act"), and under the Exchange Act, 15 U.S.C. §§ 78a, *et seq*.

9.      The Plaintiff further contends that, pursuant to 28 U.S.C. § 1391(b), venue is proper in the District of Massachusetts in that, pursuant to the Transaction Documents (defined below), the Parties agreed that any and all disputes between and/or among them shall be brought, *inter alia*, in the state or federal courts in the Commonwealth of Massachusetts. Additionally, this Court is such District where the Plaintiff is headquartered and has its principal place of business, and is where the violative conduct described herein is alleged to have occurred.

10.      This Court has personal jurisdiction, generally and specifically, over the Defendants by express terms of the Agreement, and as arising from their extensive business contacts, generally over time and specifically in their business dealings with the Plaintiff, within the Commonwealth of Massachusetts.

## IV. FACTUAL BACKGROUND

### A.      Plaintiff's Investments in SOUM and the Transaction Documents

11.      On or about January 18, 2017, the Company executed, *inter alia*, a certain Securities Purchase Agreement (hereinafter the "First Purchase Agreement" or the "First SPA") and a certain Convertible Promissory Note, in the amount of Sixty Thousand and 00/100 ($60,000.00) Dollars (U.S.) (hereinafter the "First Convertible Note" or "First Note) thereby entering into a contract with the Fund for its investment in SOUM. *See* First Purchase Agreement attached, restated and incorporated by reference herein as **Exhibit A**; *see* First Convertible Note, attached, restated and incorporated by reference herein as **Exhibit B** (collectively, the First Purchase Agreement and the First Note, with other transaction documents, hereinafter as the "First Transaction Documents").

12.      On or about January 9, 2018, the Company executed, *inter alia*, a certain Securities Purchase Agreement (hereinafter the "Second Purchase Agreement" or the "Second SPA") and a certain Convertible Promissory Note in the amount of Thirty-Seven Thousand - Seven Hundred - Fifty and 00/100 ($37,750.00) Dollars (U.S.) (hereinafter the "Second Convertible Note" or the "Second Note," and, with the Second Purchase Agreement and other documents, collectively hereinafter the "Second Transaction Documents"), thereby entering into further contracts with Plaintiff Auctus for its additional investment in SOUM. *See* Second Purchase Agreement, attached,

restated and incorporated by reference herein as **Exhibit C**; Second Convertible Note, attached, restated and incorporated by reference herein as **Exhibit D**.

13.     On or about March 1, 2018, the Company executed, *inter alia*, a certain Securities Purchase Agreement (hereinafter the "Third Purchase Agreement" or the "Third SPA") and a certain Convertible Promissory Note in the amount of Twenty-Seven Thousand - Seven Hundred - Fifty and 00/100 ($27,750.00) Dollars (U.S.) (hereinafter the "Third Convertible Note" or the "Third Note," and, with the Third Purchase Agreement and other documents, collectively hereinafter the "Third Transaction Documents"), thereby entering into further contracts with Plaintiff Auctus for its additional investment in SOUM. *See* Third Purchase Agreement, attached, restated and incorporated by reference herein as **Exhibit E**; Third Convertible Note, attached, restated and incorporated by reference herein as **Exhibit F**.

14.     On or about April 5, 2018, the Company executed, *inter alia*, a certain Securities Purchase Agreement (hereinafter the "Fourth Purchase Agreement" or the "Fourth SPA") and a certain Convertible Promissory Note in the amount of One Hundred - Thousand and 00/100 ($100,000.00) Dollars (U.S.) (hereinafter the "Fourth Convertible Note" or the "Fourth Note," and, with the Fourth Purchase Agreement and other documents, collectively hereinafter the "Fourth Transaction Documents"), thereby entering into further contracts with Plaintiff Auctus for its additional investment in SOUM. *See* Fourth Purchase Agreement, attached, restated and incorporated by reference herein as **Exhibit G**; Fourth Convertible Note, attached, restated and incorporated by reference herein as **Exhibit H**.

15.     On or about July 11, 2018, the Company executed, *inter alia*, a certain Securities Purchase Agreement (hereinafter the "Fifth Purchase Agreement" or the "Fifth SPA," and collectively, with the First, Second, Third and Fourth SPA's, hereinafter as the "Purchase

Agreements" or the "SPA's") and a certain Convertible Promissory Note (hereinafter the "Fifth Convertible Note" or the "Fifth Note" and collectively, with the First, Second, Third and Fourth Notes, hereinafter as the "Convertible Notes" or the "Notes"). The Fifth Note was amended twice, first on August 9, 2018, and next on January 29, 2019 (hereinafter the "Amended Fifth Convertible Note" or the "Amended Fifth Note," and, with the Fifth Purchase Agreement and other documents, collectively hereinafter the "Fifth Transaction Documents," and collectively, with the First, Second, Third and Fourth Transaction Documents hereinafter as the "Transaction Documents"). The amendments to the Amended Fifth Note totaled an investment amount of Eighty-Six Thousand, Five-Hundred and Fifty and 60/100 ($86,550.60) (U.S.) Dollars, and the Defendant thereby entered into further contracts with Plaintiff Auctus for its additional investment in SOUM. *See* Fifth Purchase Agreement, attached, restated and incorporated by reference herein as **Exhibit I**; Fifth Convertible Note, attached, restated and incorporated by reference herein as **Exhibit J**; Amendment 1 to the Convertible Promissory Note Issued on July 11, 2018, attached, restated and incorporated by reference herein as **Exhibit K**; and Amendment 2 to the Convertible Promissory Note Issued on July 11, 2018, attached, restated and incorporated by reference herein as **Exhibit L**.

16.    A review of the Plaintiff's Convertible Notes reveal that the Notes have a feature where a default on one note constitutes a default on all of the notes. Section 3.18 of the Notes, entitled "Cross-Default," provides that, "a breach or default by the Borrower of any covenant or other term or condition contained in any of the Other Agreements (as defined herein)," … shall "be considered a default under this Note…" Therefore, under the terms and conditions of the Notes, the Plaintiff has a right to pursue default terms on each of the Convertible Notes, if there has been an event of default on one of the notes.

17.     A review of the Plaintiff's Transaction Documents reveals that the Notes have a conversion feature which entitles the Plaintiff to convert, at amounts and upon timing that Auctus deemed appropriate, the Defendants' debt obligations, in whole or in part, into freely traded shares of SOUM common stock.   Under the terms and conditions of the Transaction Documents, the Plaintiff has, and has had, a contractual right to convert at a price for SOUM common stock, averaged over a series of prior trading days, including and preceding the Conversion Date.

18.     By the Transaction Documents, the Defendants were also required to allocate and reserve shares of its common stock for future conversions by the Plaintiff. The reservation of shares was an independent obligation by the Defendants to the Plaintiff, and was a mechanism by which to effectuate the share conversion as envisioned by the Notes.

19.     In reliance upon the Transaction Documents, during the relevant time period, the Plaintiff issued Notices of Conversions and converted portions of its investment in the Defendants into shares of freely traded SOUM common stock in the over-the-counter (hereinafter "OTC") securities markets, and, as a SOUM shareholder and at various times, the Plaintiff has held certain equity positions in SOUM shares in the Defendant Company.

20.     Thus, in detrimental reliance upon the information, representations and statements from the Defendants, the Plaintiff invested hundreds of thousands of dollars in the Company, which has, and has had, a fiduciary duty and a duty of the utmost loyalty to the Plaintiff. Unfortunately, to its detriment, the Plaintiff has learned that the Defendants had misrepresented and deceived the Fund, and omitted material information while having a duty of disclosure, regarding the Company, and perpetrated securities fraud in connection with the offer, purchase and sale of securities, in violation of, *inter alia*, Section 10(b) of the Securities Exchange Act of

1934, *as amended*, and Rule 10b-5, as promulgated thereunder, and the Massachusetts Uniform Securities Act, M.G.L. c. 110A, §§101, *et seq., as amended.*

**B.**    **Defendants' Misrepresentations and Omissions of Material Facts and Securities Fraud in Connection with Offer, Purchase and Sale of Securities**

21.    The Plaintiff asserts and alleges that the Defendants misrepresented, omitted and failed to provide material facts to Auctus in connection with its investments and in the offer, purchase and sale of securities, and especially with respect to the business, finances, operations and other material matters relating to the Defendants, including but not limited to certain corporate transactions of Defendants.

22.    As an example of such material misrepresentations, omissions and/or misleading or false information, on or about September 1, 2016, the Defendants published and disseminated certain statements, entitled, "*SoOum, Corp., Signs Exchange Agreement to Acquire Western Grade, LLC,*" which provided, in pertinent part, as follows:

> Sep 01, 2016 (Marketwired via COMTEX) -- SHOW LOW, AZ-- (Marketwired - September 01, 2016) - SoOum Corp (otc pink:SOUM), a Physical Commodities e-Commerce and Arbitrage Trading company, and Western Grade, LLC, a civil contractor, have just announced, after careful consideration, the management teams of both companies have unanimously decided to enter into a definitive "Exchange Agreement" whereby SoOum Corp. (SOUM) will acquire all of the outstanding ownership interests of Western Grade, LLC.

> Under the terms of the "Exchange Agreement," Western Grade Members will exchange their ownership interest for 420,000,000 shares of the common stock of SoOum Corp (SOUM) which represents an ownership interest in SoOum of approximately 42%. Upon completion of the proposed transactions, Western Grade will be a wholly owned subsidiary of SoOum. The obligation to close the transaction under the terms of the "Exchange Agreement" is subject to the normal terms and conditions contained in such agreements.

> Management believes that the proposed transaction will prove to be mutually beneficial for both companies. Each company complements the other's business models, as SoOum will aim to improve Western's already solid performance through further business development, while Western will supply raw materials for SoOum's e-Commerce Platform and existing customers. The two

companies will hit the ground running, as they have already discussed different business opportunities for the near future.

Western Grade prides itself in bringing state-of-the-art equipment, highly skilled operators and unsurpassed leadership to reach the highest level of customer satisfaction. The Company is technically capable of meeting or exceeding Forest Service Supplemental Specifications, and most other governmental utilities and site improvement specifications.

Some of Western Grades recent jobs include: a large-scale water extension at the Painted Desert, AZ, road construction on the US/Mexico Border, Show Low, AZ sanitary reconstruction, the Willow Beach Fish Hatchery and other projects ranging from highways to parking lots.

23.     Upon information and belief, the Defendants' statements were incomplete, misleading, and/or misrepresentative or omitted material information with a duty to disclose the same to the Plaintiff.

24.     As a further example of such material misrepresentations, omissions and misleading information, on or about October 11, 2016, the Defendants published *"SoOum Corp. (SOUM) Regains "Current" Status on OTC Markets,"* which provided, in pertinent part, as follows:

NEW YORK, NY -- (Marketwired) -- 10/11/16 -- SoOum Corp. (OTC PINK: SOUM) announces that ALL US SEC FILINGS are up to date, regaining "CURRENT STATUS;" while subsequently removing the "YIELD" sign from OTC markets.

Remaining current is a priority for SoOum Corp, and was the Company's next milestone in its "Master Plan" presented by the CEO – William Westbrook, who has stated: "I am proud of SoOum's team in the manner by which they have worked together to meet our objectives and obligations. We understand the importance of being current in our filings, and I expect this proves our commitment to our shareholders and future investors alike, as well as a commitment to our mission."

25.     Upon information and belief, the Defendants' statements were incomplete, misleading, and/or misrepresentative or omitted material information with a duty to disclose the same to the Plaintiff.

26.     As a further example of such material misrepresentations, omissions and misleading information, on or about October 26, 2016 the Defendants published *"SoOum Corp (SOUM) Announces $365,000 in Revenue and Provides Updates on Other Western Grade Projects"* which provided, in pertinent part as follows:

> NEW YORK, NY--(Marketwired - October 26, 2016) - SoOum Corp (OTC PINK: SOUM), a Physical Commodities Arbitrage and e-Commerce Company, which recently acquired Western Grade LLC, a civil contractor, announces approximately $365,000 USD in revenue from its current pipeline of business.
>
> Three (3) of Western's six (6) jobs in progress are coming to completion; two (2) are on schedule to be completed by week's end. The larger of the two (2) jobs consisting of demolition, utilities, grading, and paving, has a value of approximately $250,000 USD. The smaller jobs, a storm drainage and site grading project in the private sector has a value of approximately $45,000 USD. While another project (milling, grading and paving) in the government sector is on schedule for completion by the end of the month, with its value reported to be approximately $170,000 USD.

27.     Upon information and belief, the Defendants' statements were incomplete, misleading, and/or misrepresentative or omitted material information with a duty to disclose the same to the Plaintiff.

28.     As a further example of such material misrepresentations, omissions and misleading information, on or about February 23, 2017, the Defendants published *"SoOUM Corp Provides Shareholders Letter from its CEO,"* which provided, in pertinent part as follows:

> NEW YORK, NY--(Marketwired - February 23, 2017) - SoOUM Corp (OTC PINK: SOUM) provides a Letter from its CEO per below:
>
> Dear Shareholders,
>
> We've accomplished so much in 2016, and we're geared up to do the same in 2017; while making sure we sustain everything we built over the years so that we can grow SoOum and fulfill its duties and ultimate mission.
>
> Our management is taking care of that.

We're setting goals each month to ensure we have the resources for the best infrastructure, global communication, the best data, the best economics and the best ground game to wage a sustained, consistent, and automated, long-term battle against scarcity.

No mission is achievable without a plan. I began by laying out milestones to reach this destination, which we referred to as our Master Plan. The plan outlines our efforts to strengthen our diverse operational bodies. This is a challenge that I happily accept and remain fully committed to.

For the remainder of 2017, we will employ the infrastructure we so tirelessly built last year. And while there are no guarantees, we will work hard to grow the company in a cohesive manner by continuing to raise capital, coordinating operations, performing further global business development beyond our activities in the Mediterranean, and by investing in strategic infrastructure such as storage capacity within the international zone in Malta.

We will continue our efforts to clean up our balance sheet, and we will work alongside Western Grade to assist in business development for the company, and have already started integrating our businesses to complement one another as we move forward. This coming year is about sustainability from growth it's about moving commodities and helping our country build a better infrastructure through Federal road projects for Western Grade.

Our management is personally committed to changing the world by addressing scarcity through this SoOum vessel. Therefore, we are surrounding ourselves with like-minded individuals who are not here to only survive by doing the least amount necessary, or to just make a few short-term dollars in the market. Those partners, shareholders and staff are happily seeking out long-term prosperity while performing at highest levels to beat scarcity in the world.

Last, but certainly not least, we have completed the first series of our balance sheet strengthening initiative to reduce debt.

**Over the Horizon (Next Three Milestones)**

Looking over the horizon, we still have much work to do. SoOum needs to gain strength as an enterprise by finishing the year with enhanced liquidity ratios; spending the first half of 2017 unifying and coordinating its major operations, and closing 2017 with strong and consistent business across its operations.

**Our Core Action Principles**
- Build on strength
- Protect our company and those we serve
- Stand behind our employees
- Deliver the highest satisfaction to customers and clients
- Support our communities
- Advance our mission

CLOSING

I am deeply honored to be a part of something as great and meaningful as this company. I am proud of the achievements to date of this group, even during trying times. I invite a close study and analysis of our company and welcome you to join our ranks in any capacity that increases our customer satisfaction, your well-being, and SoOum's market position.

Thank you,

/s/ William Westbrook
CEO, SoOum Corp

29.     Upon information and belief, the Defendants' statements were incomplete, misleading, and/or misrepresentative or omitted material information with a duty to disclose the same to the Plaintiff.

30.     As a further example of such material misrepresentations, omissions and misleading information, on or about November 14, 2017, the Defendants published *"SoOum Corp Releases Its Letter to Shareholders Detailing The Company's Newly Rebuilt International Trade Platform,"* which provided, in pertinent part as follows:

NEW YORK, Nov. 14, 2017 (GLOBE NEWSWIRE) -- SoOum Corp. (OTCPink:SOUMD) (OTCPINK:SOUM) ("SoOum" or the "Company"), a Physical Commodities Arbitrage Trading company offering a web-based International Trade platform, SoOum.com, released a Letter to Shareholders detailing the Company's newly rebuilt International Trade Platform, as follows:

Dear Shareholders:

Let me begin by saying how grateful I am for being part of such a magnificent group of visionaries and achievers.

SoOum's mission provides the company with multifaceted avenues in reaching its goals. This was engineered from the beginning with the core mission of *addressing shortages and minimizing global scarcity.*

SoOum had to navigate many different paths in order to progress toward this mission, but has always stayed true to both the humanitarian and value-building elements that emerge from the mission itself.

Since the beginning, the Company has been able to build supply chains, introduce International marketing and promotion to frontier marketplaces, gather suppliers worldwide, and partner with or acquire other businesses. Yet, the overall goal of the Company has always been to find the most productive ways to *address shortages and minimize global scarcity*. That being said, this path has been straight at times and winding at others. But one thing is certain: We have always kept our eyes on the prize. With this optimistic spirit, we have built, and we will continue to build.

Presently, we are focused on building a subscription-based virtual system (SoOum.com) that operates globally 24/7, matching importers with exporters and provides a clear trading pathway for International Traders. It employs over a decade of data gathered by the SoOum team and includes intelligence gleaned from the best databases across the world. This system is sufficiently dynamic so that each of its subscribers have flexible pathways to a relatively quick physical commodity trade.

Unlike other international trade databases, ours is not just another global "Yellow Pages"; it is a complete live trading platform. Because SoOum.com provides the ease and ability to accommodate a live trade transaction from start to finish, we truly are on an effectual path toward making a sizable impact on scarcity in the world while driving value to our Shareholders.

During this past quarter (and year) we have worked hard, even in the face of tough market conditions, to build and launch our online 24/7 global trading of physical commodities. Now we are happy to report that it is in full operation and ready to be introduced to the world.

The world can join us in different ways, such as becoming an exporter, importer, freight forwarder, spread investor, or trader within our system.

We have made our system so simple that international trade can be done on the move, from your phone, your home computer, or even at the office. Trade can now happen while you travel, while you vacation, and while you attend family and social events. This is a system that you take with you wherever you may go, all the while addressing scarcity through SoOum as well as making a living for yourself and your family.

This systems technology does the heavy lifting, while providing you the opportunity to be flexible as you multitask.

We are making it our focal point to not become a global "Yellow Pages" nor a supply chain builder, but a gap filler. This will ensure our subscribers make money while fulfilling a magnificent global duty to minimize global scarcity.

The power of our system, simply, will be its functionality, alongside our commitment to build upon our subscribers' feedback as to what works and what needs enhancement, enabling viral growth through continual flow of interactions among members and SoOum, and an "it works" message that speaks for itself.

Going forward, I greatly anticipate the sharing of SoOum's successes and advances with our shareholders and friends.

Thank you for your support, and I look forward to seeing you on the trail.

Sincerely,
William Westbrook
Chairman and Chief Executive Officer SoOum Corp.

31.     Upon information and belief, the Defendants' statements were incomplete, misleading, and/or misrepresentative or omitted material information with a duty to disclose the same to the Plaintiff.

32.     As a further example of such material misrepresentations, omissions and misleading information, on or about January 10, 2018, the Defendants published *"SoOUM Corp Press Release"* which provided, in pertinent part as follows:

NEW YORK, Jan. 10, 2018 (GLOBE NEWSWIRE) — SoOum Corp (OTCPINK: SOUM), a Physical Commodities International Trading Company offering a web-based trade platform (www.SoOum.com), proudly announces it will begin to integrate big data, along with advanced functionality and user security to its Platform.

SoOum entered into an agreement with an established database management firm known for outstanding customer support, and trusted by thousands of companies from Fortune 500s to small business enterprises. In an effort to broaden the "Trading Platform's" data driven features which addresses key hold-ups in the system, and utilizes big data management, these improved features should provide a truly advanced, but user-friendly experience for each of SOUM's members.

This agreement partners SoOum with a versatile and creative tech company employing industry leading practices to customize workflows, implement customer relationship management, "Big Data," cloud technology, and inbound marketing tools; all aiding SoOum's business expansion through the Company website, bringing SoOum.com further to market as a result.

Through this partnership, SoOum, also built an advanced mobile application, enhancing the overall design of the platform, adding remote security, including blockchain technology. The "Trading Platform' integrates international banking and currency management, with the possibilities of accepting cryptocurrencies. The Company continues its research on the risks and the possibility of establishing a cryptocurrencies payment platform, as such.

33.     Upon information and belief, the Defendants' statements were incomplete, misleading, and/or misrepresentative or omitted material information with a duty to disclose the same to the Plaintiff.

34.     As a further example of such material misrepresentations, omissions and misleading information, on or about January 23, 2018, the Defendants published *"SoOum Corp (SOUM) Announces Increasing Platform Traffic and Other Business Updates,"* which provided, in pertinent part as follows:

NEW YORK, Jan 23, 2018 (GLOBE NEWSWIRE via COMTEX) –

SoOum Corp. (otcpink: SOUM) ("SoOum" or the "Company"), a Physical Commodities Arbitrage Trading Company offering a web-based International Trade Platform with a simple mission; to minimize global scarcity, and to help relieve hunger, announces increasing website traffic and plans for more infrastructure and office space.

SoOum's innovative platform begins to take shape. IT developers, marketing consultants and project managers gather in Arizona to plan out a comprehensive platform that will enhance user memberships. SoOum has transitioned thirty-one of its customers to full-paying members, while numbers of members and visitors are increasing daily. The website is attracting eight hundred to one thousand visitors every twenty-four hours. To date, SoOum has increased website visitor rate by thirty percent, and is steadily increasing.

SoOum key members and hired consultants are discussing strategies and developing plans to convert visitors into full-paying customers. Changes within the system will cover graphic user interface, stress testing, SQL data, cryptocurrency, and the addition of blockchain technology.

Discussions with local Arizona bankers, key chambers of commerce officials, and angel investors are meeting with SoOum senior management this week to discuss office space and key strategies. Discussions will focus primarily on grants and loans for a hard stand office space and the opportunity of increasing local employment.

35.     Upon information and belief, the Defendants' statements were incomplete, misleading, and/or misrepresentative or omitted material information with a duty to disclose the same to the Plaintiff.

36.     As a further example of such material misrepresentations, omissions and misleading information, on or about March 20, 2018, the Defendants published *"Agreement to Acquire TradeBoss.com,"* which provided, in pertinent part as follows:

> NEW YORK, March 20, 2018 (GLOBE NEWSWIRE) -- SoOum Corp. (OTCPINK: SOUM) ("SoOum" or the "Company"), a Physical Commodities Arbitrage Trading company offering a web-based International Trade platform, SoOum.com, announced it has entered into a definitive agreement to acquire privately owned TRADEBOSS.COM, a worldwide b2b marketplace.  The transaction is expected to close in the 2nd quarter of 2018.

> The acquisition of TradeBoss will add 655,000 users to SoOum.com, including 107,000 products, and more than 164,000 trade leads.  SoOum.com will provide a transaction close option and a centralized interface to track and conduct trade safe - effectively in a simplified format for current TradeBoss members.  On average, TradeBoss.com boasts 900-1000 users browsing the b2b marketplace at any time. According to TradeBoss, members can advertise their company and products, find new products, and meet new business partners across the globe.

> SoOum.com is an International "Trade Platform" with a simple mission; to "Minimize Global" scarcity, by addressing commodity shortages and simplifying international trade. The Company is currently focused on adding users to the SoOum.com "Trade Platform," and will continue to search for other acquisition possibilities intended to create value for SoOum shareholders and to help push SoOum Corp to the forefront of International Trade.

37.     Upon information and belief, the Defendants' statements were incomplete, misleading, and/or misrepresentative or omitted material information with a duty to disclose the same to the Plaintiff.

38.     As a further example of such material misrepresentations, omissions and misleading information, on or about March 22, 2018 the Defendants published *"Contracts for importation into Malta, First Shipment $381,946,"* which provided, in pertinent part as follows:

> NEW YORK, March 22, 2018 (GLOBE NEWSWIRE) -- SoOum Corp. (OTCPINK: SOUM) announces partnering with Flying W. Ranch, a black angus cattle ranch located in the southwest region of the United States.  The agreement calls for Flying W. Ranch to supply SoOum Corp. 100% USDA Beef and live cattle for importation into the Mediterranean basin and surrounding regions.

Currently, SoOum Corp prepares its first shipment to Malta of various cuts of beef valued at approximately US $381,946.00.  The current beef shipment and future shipments are to originate from Fort Worth, Texas, USA, destined for Malta - Freeport, an International port on the Island of Malta.

To accommodate the new partnership and facilitate future transactions, the Company recently formed a Maltese subsidiary called SoOum Malta Limited, located in an area designated as an international zone on the Island of Malta.  This location is strategic for SOUM, as it is not regulated by the EU; allows for ease of distribution across Europe, as well as the local Maltese markets.

All beef products are 100% USDA, as well as Halal certified. The Company said further updates will follow.

39.     Upon information and belief, the Defendants' statements were incomplete, misleading, and/or misrepresentative or omitted material information with a duty to disclose the same to the Plaintiff.

40.     As a further example of such material misrepresentations, omissions and misleading information, on or about March 27, 2018, the Defendants published *"SoOum Corp's (SOUM) Chief Financial Officer Releases "Letter to Shareholders" Detailing Its Current Strategies,"* which provided, in pertinent part as follows:

NEW YORK, March 27, 2018 (GLOBE NEWSWIRE) -- SoOum Corp. (OTCPINK: SOUM) ("SoOum" or the "Company"), a Physical Commodities Arbitrage Trading Company, offering a web-based International Trade platform – SoOum.com – releases a "Letter to Shareholders."

Mr. Terence Byrne, SOUM's new Chief Financial Officer, provides a detailed letter about the Company's current strategies, as follows:

"Dear Shareholders and Friends of SoOum:

In the past several months we have accomplished a great deal.  As we progress into 2018, our story is starting to unfold nicely.

Recently, we implemented a two-tier strategy consisting of expanding our global platform membership and enhancing in-house International Arbitrage Trading.

Our web-based 'International Trade Platform' - SoOum.com - has made leaps and bounds from a simple idea to a fully-operational International trading tool that we hope

will bring SoOum Corp to the forefront of International trade, while simplifying the process for the trade community and beyond.

SoOum.com members can easily access live trading opportunities, track deals in progress, gather trade intelligence, instantly share images, proof of product, interact with counterparties, and much more. All program functionalities within a centralized location right on their laptop, PC, or mobile device. Changes and additional functionality are coming soon. We will keep you all updated, as this is truly an exciting time for myself and the team here at SoOum.

Getting back to our strategy for platform growth, it's fairly simple. We are growing our subscriber base in two-ways. We are instituting an organic approach through techniques like inbound marketing and SEO optimization, and we will also continue to research the acquisition of other websites that will add value by bringing new members in bulk to SoOum.com.

With that being said, recently we have entered into negotiations with Tradeboss.com, an established worldwide b2b marketplace. This acquisition will include over 655,000 members that will be added to our platform. The talks with Tradeboss.com are going very well, as we continue to make strides to come to an agreement that will benefit both parties; our due diligence continues.

In conjunction with SoOum.com's business model, we have a backlog/pipeline of deals developing, as our in-house 'International Arbitrage' trading business begins to take shape again. When we arbitrage, we buy an asset in one market and sell it in another market, when a price differential exists due to irregular supply and demand conditions of both or one of the two markets. We have a team of experts on hand working diligently with our proprietary technology to hone in on such supply and demand conditions of a broad range of commodities.

'Physical Commodities' arbitrage is very capital intensive, and before I joined the team, financing such transactions proved difficult, but that's all changing now. One of my priorities here at SoOum, in regards to our in-house arbitrage trade business, is to create a track record of completed transactions that will attract cheaper financing and better capital raising opportunities.

Additionally, I have been working very hard with our counter-parties in Malta to establish a scalable 100% USDA beef trade. Our buyers in Malta are on-board and progress is made every day. We hope to establish a long-term relationship and scale the business accordingly.

Furthermore, I am very proud of the management team and the creation of our Board of Advisors has truly paid off for us. Their expertise and dedication has added an enormous amount of talent to our team, and because of this, we are getting things done on multiple fronts. Thanks to our team and our technology, we are creating a shorter time frame from shortage or surplus to trade through our in-house arbitrage and SoOum.com.

In closing, we have been moving forward by developing business transactions and engaging acquisition prospects. Our goal is to develop multiple streams of revenue to diversify our business model, as all lines of business being developed are and always will be intended to aid in our 'Mission - Addressing Shortages to Minimize Global Scarcity.'

> Sincerely Yours,
> /s/
> Terence Byrne
> Chief Financial Officer
> SoOum Corp."

41.    Upon information and belief, the Defendants' statements were incomplete, misleading, and/or misrepresentative or omitted material information with a duty to disclose the same to the Plaintiff.

42.    As a further example of such material misrepresentations, omissions and misleading information, on or about February 27, 2019, the Defendants published *"SoOum Corp's (SOUM) Board of Directors Cancels Reverse Stock Split; Announces New Global Sales Division,"* which provided, in pertinent part as follows:

> NEW YORK, Feb. 27, 2019 (GLOBE NEWSWIRE) -- SoOum Corp (OTCPINK: SOUM), a Physical commodities trading and arbitrage company, announces that after further review and recent developments, the Company's Board of Directors decided to cancel its intended reverse stock split.
>
> The Board and the Company's management team continue to meet with various new investors and lending sources can provide less expensive capital. Because of such new financial opportunities, the Board does not believe a reverse stock split would be in the best interest to the Company and its shareholders at this time.
>
> Furthermore, SoOum's new head of global sales and distribution division will aggressively expand its operations into new lines of business intended to diversify its future revenue stream.
>
> Stay tuned, as informational updates continue as progress transpires.

43.     Upon information and belief, the Defendants' statements were incomplete, misleading, and/or misrepresentative or omitted material information with a duty to disclose the same to the Plaintiff.

### C.     Defendants' Events of Default and Breaches of the SPAs and Notes

44.     Based upon the fraud and deceit and securities fraud by the Defendants the Plaintiff contends that SOUM has violated Section 10(b) of the Exchange Act and Rule 10b-5, as promulgated thereunder, and that the Defendants have breached the Transaction Documents.

45.     Thus, the Plaintiff asserts that the Company incurred and/or caused several Events of Default, as set forth in Article III, entitled "*Events of Default*," of the Note. These Events of Default included, *inter alia*, breaches of following provisions of the Transaction Documents: a) Sections 1.3 (Authorized Shares); b) Sections 1.4(g) (Sub-penny conversion price); c) Section 1.4(h) (Failure to Deliver Common Stock prior to Delivery date); d) Section 2.8 (Non-circumvention); e) Section 3.1 (Failure to pay principal or interest); f) Section 3.2 (Failure to Honor Conversion); g) Section 3.4 (Breach of Agreements and covenants – Sections 2.8 of the Note (Non-circumvention) and 1.3 (Authorized Shares)); h) Section 3.5 (Breach of Representations and Warranties -Section 3(g) (SEC Documents; Financial Statements)) of that certain Securities Purchase Agreements (the "SPAs") by and between SOUM and Auctus, dated January 18, 2017, January 9, 2018, March 1, 2018, April 5, 2018 and July 11, 2018; and i) Section 3.10 (Failure to Comply with the Exchange Act).

46.     Thereafter, it is undisputed that the Company incurred and/or caused several Events of Default, as set forth in Article III, entitled "*Events of Default*," of the Notes. In addition, pursuant to Section 3.10, an Event of Default shall have occurred by the failure of the Company to properly allocate and/or reserve shares of common stock for the Fund upon its election of conversion, in

whole or in part, and its failure to pay the principal and/or interest, when due under the terms of the Notes. *See* Notes (**Exhibits B, D, F, H & J**), § 3.10. Such Events of Default, together with others, have occurred and continue to occur.

47.     On or about December 4, 2019, the U.S. Securities and Exchange Commission (hereinafter the "SEC" or the "Commission") filed a letter revoking the registration of the company's securities for failure to comply with periodic filing requirements. *See Letter Revoking Registration,* attached, restated and incorporated by reference herein as **<u>Exhibit M</u>**. The company filed its last 10-K on July 26, 2017 for the period endings on December 31, 2016 and filed its last 10-Q on December 1, 2017 for the period ending on September 30, 2017. Therefore, the Company was in default on the Notes in early 2018 for failure to remain current with its SEC Filings, as required by Section 3.10 of the Notes (Failure to Comply with the Exchange Act).

48.     As provided by Section 3.18 of the Notes, entitled "Cross-Default," a breach or default by the Borrower of any covenant or other term or condition contained in any of the Agreements shall be considered an event of default under each Note. Therefore, under the terms and conditions of the Notes, the Plaintiff has a right to pursue default terms on each of the Convertible Notes, if there has been an event of default on one of the notes.

49.     Upon the occurrence of an Event of Default under Section III.1 of the Notes, the entire principal and accrued interest shall be due and owing hereunder. Furthermore, an Event of Default pursuant to Section 3.10 of such Notes, the Company is required to pay, and shall pay, the Fund the "Default Sum" (as defined therein), due under the Notes as multiplied by Twenty-four and 00/100 (24.00%) percent. Thus, as of January 27, 2020, the Company owes the Fund, under the SPAs and the Notes, the Default Sum totaling One Million- Five Hundred – Thirty – Eight Thousand – Eight Hundred – Sixty - Six and 00/100 (**<u>$1,538,866.00</u>**) Dollars (U.S.). *See* **<u>Exhibit</u>**

**1A-1E**, as attached, restated and incorporated by reference herein. Until paid, the Default Sum shall continue to accrue the default interest rate of Twenty-four and 00/100 (24.00%) percent per year, provided by the Notes.

50.    In sum, the Defendants perpetrated a fraud upon the Plaintiff, which suffered as a consequence.   Throughout, the Defendants have been unjustly enriched and converted the Plaintiff's assets, causing it to suffer further damages and injuries.   As a result of the fraudulent scheme, actions, concealment, and omissions of the Defendants, the Plaintiff lost substantial monies and lost opportunity in such assets.

## V. <u>VIOLATIONS OF LAW</u>

### <u>COUNT I - VIOLATIONS OF FEDERAL SECURITIES LAWS</u>
**(as to all Defendants)**

51.    The Plaintiff reasserts Paragraphs 1 through 50 of the Amended Complaint, together with **<u>Exhibits</u>**, and restates and incorporates them herein by reference.

52.    The Defendants violated the Securities Act, 15 U.S.C §77a, *et seq.,* in addition to Section 10(b) of the Exchange Act, 15 U.S.C. §78j(b) and Rule 10b-5 promulgated thereunder, 17 C.F.R. §240.10b-5, in that, as described herein, and in connection with the purchase, offer and sale of securities, they knowingly, recklessly and intentionally:

     a)    employed manipulative and deceptive devices and contrivances;

     b)    employed devices, schemes and artifices to defraud;

     c)    made untrue statements of material fact and omitted to state material facts necessary in order to make statements made, in light of the circumstances under which they were made, not misleading; and

     d)    engaged in acts, practices and a course of business which operated as a fraud or deceit upon the Plaintiff.

53.     As a direct and proximate cause of the violations of the federal securities laws by the Defendants, Plaintiff Auctus has suffered, and continues to suffer, irreparable harm, and general, special, and consequential damages, including, but not limited to, loss of profits, interest, and other damages, injuries, and losses, to its detriment, and resulted in the unjust enrichment of the Defendants.

## COUNT II - VIOLATIONS OF MASSACHUSETTS STATE SECURITIES LAWS
### (as to all Defendants)

54.     The Plaintiff reasserts Paragraphs 1 through 53 of the Amended Complaint, together with Exhibits, and restates and incorporates them herein by reference.

55.     The Defendant violated the Massachusetts Uniform Securities Act, Massachusetts General Laws Chapter 110A, §§ 101, et seq., as amended, in that, as described herein, it offered and sold securities by means of untrue statements of material fact.

56.      The Defendants recklessly and intentionally misrepresented material information and omitted disclosure of material information to the Plaintiff in connection with the offer, purchase and sale of securities in the Commonwealth of Massachusetts.

57.     As a direct and proximate cause of the violations of the Massachusetts state securities laws by the Defendants, Plaintiff Auctus has suffered, and continues to suffer, irreparable harm, and general, special, and consequential damages, including, but not limited to, loss of profits, interest, and other damages, injuries, and losses, to its detriment, and resulted in the unjust enrichment of the Defendants.

## COUNT III – BREACH OF CONTRACT
### (only as to Defendant SOUM)

58.     The Plaintiff reasserts Paragraphs 1 through 57 of the Complaint, together with **Exhibits**, and restates and incorporates them herein by reference.

59.     Pursuant to the Securities Purchase Agreements and the Convertible Notes, the Fund invested in the Company and sought to become a shareholder, in good faith, to join the Company in the accomplishment of its business goals and in accordance with the standards of the business and the securities industry.  The Fund contends that the Defendants breached the contract with the Plaintiff by its conduct, as described herein.

60.     The Fund alleges that the Company is liable for a breach of contract and for a breach of an implied covenant of good faith and fair dealing. A breach of contract is failure without excuse to perform a duty, which is due under the contract. Additionally, the interpretation of a contract is a question of law, not fact. If the wording is not ambiguous, then the contract must be enforced according to its plain terms.

61.     The Plaintiff performed its obligations under the Purchase Agreements and the Notes, and in good faith.

62.     The Defendants, by their conduct described herein, violated the Purchase Agreement and the Notes, breaching its contract with the Plaintiff.

63.     As a direct and proximate cause of the Defendants' breaches of its contract, the Plaintiff has suffered irreparable harm, and general, special, and consequential damages, including, but not limited to, loss of profits, interest, and other damages, injuries, and losses, to its detriment.

## COUNT IV – BREACHES OF IMPLIED
## COVENANT OF GOOD FAITH-FAIR DEALING
### (only as to Defendant SOUM)

64.     The Plaintiff reasserts Paragraphs 1 through 63 of the Complaint, together with **Exhibits**, and restates and incorporates them herein by reference.

65.     It is well established in that every contract carries an implied covenant of good faith and fair dealing whereby the parties treat each other fairly and act in good faith and no party to the

contract shall take any action to harm another party's rights under the contract. The duty imposed by this "implied covenant of good faith and fair dealing" pertains to bad faith in the performance of a contract, not just in its execution or negotiation. Implicit in every contract is the requirement on faithfulness to an agreed upon common purpose and consistency with the justified expectations of the other party.

66.     A breach of contract is the failure to perform for which legal excuse is lacking. As a matter of law, a contract existed, which the Company breached and failed to comply with the covenant of good faith and fair dealing. The law is clear - the Fund had a binding contract and the Company has no legal basis, as a matter of law, to avoid its obligations under the Notes or the damages, including but not limited to damages set forth pursuant to Section 3.10 of such Notes which arose as a result from the breach of the Purchase Agreements and the Notes.

67.     The Defendants had a duty of good faith and fair dealing in its dealings with the Plaintiff and pursuant to the promises, contract, and statements made to the Plaintiff to induce it to enter into the contract and provide assets to the Defendants in exchange for their promise to repay the same, with interest.

68.     Under the covenant, the Defendants were obligated to good faith perform of its obligations under the Purchase Agreements and the Notes with the Plaintiff, and to be faithful and consistent to the justified expectations of the Plaintiff.

69.     As described above, the Defendants breached the implied covenant of good faith and fair dealing with the Plaintiff.

70.     As a direct and proximate cause of the Defendants' breaches of the implied covenant of good faith and fair dealing, the Plaintiff has suffered irreparable harm, and general,

special, and consequential damages, including, but not limited to, loss of profits, interest, and other damages, injuries, and losses, to its detriment.

## COUNT V – UNJUST ENRICHMENT
### (as to all Defendants)

71.     The Plaintiff reasserts Paragraphs 1 through 70 of the Complaint, together with the **Exhibits**, and restates and incorporates them herein by reference.

72.     The Defendants illegally received assets and benefits from the Plaintiff, as arising from its false and fraudulent statements and misrepresentations, and without providing equivalent value therefor.

73.     The Defendants' actions, courses of conduct, and omissions were wantonly, intentionally, and maliciously conducted against the Plaintiff, to its detriment.

74.     The Defendants have been unjustly enriched by its actions, as described herein.

75.     As a direct and proximate cause of the Defendants' unjust enrichment, the Plaintiff has suffered irreparable harm, and general, special, and consequential damages, including, but not limited to, loss of profits, interest, and other damages, injuries, and losses, to its detriment.

## COUNT VI – BREACH OF FIDUCIARY DUTY
### (as to all Defendants)

76.     The Plaintiff reasserts Paragraphs 1 through 75 of the Complaint, together with the **Exhibits**, and restates and incorporates them herein by reference.

77.     A fiduciary relationship existed between the Plaintiff and the Defendants, requiring it to act with a duty of the utmost loyalty and trust on behalf of the Plaintiff.  As fiduciaries, the Defendants were required to maintain and protect the welfare of the Plaintiff.

78.     By engaging in the conduct described herein, the Defendants breached its fiduciary duties to the Plaintiff.

79.     As a direct and proximate cause of the Defendants' breach of fiduciary duty, the Plaintiff has suffered irreparable harm, and general, special, and consequential damages, including, but not limited to, loss of profits, interest, and other damages, injuries, and losses, to its detriment.

## COUNT VII - FRAUD AND DECEIT
**(as to all Defendants)**

80.     The Plaintiff reasserts Paragraphs 1 through 79 of the Complaint, together with the **Exhibits**, and restates and incorporates them herein by reference.

81.     The actions of the Defendants described herein constitute fraud and deceit, including but not limited to the following:

a)      the Defendants made false representations of material facts, and/or omitted material facts with a duty of disclosure, knowing or having reason to know of their falsity;

b)      the Defendants made said misrepresentations and omissions for the purpose of inducing reliance from the Plaintiff; and

c)      the Plaintiff did rely upon said misrepresentations and omissions, to its detriment.

82.     As a direct and proximate cause of the Defendants' fraud and deceit, the Plaintiff has suffered irreparable harm, and general, special, and consequential damages, including, but not limited to, loss of profits, interest, and other damages, injuries, and losses, to its detriment.

## COUNT VIII - NEGLIGENT MISREPRESENTATION
**(as to all Defendants)**

83.     The Plaintiff reasserts Paragraphs 1 through 82 of the Complaint, together with **Exhibits**, and restates and incorporates them herein by reference.

84.     The conduct of the Defendants as described herein constitutes negligent

misrepresentation in that the Defendants negligently provided the Plaintiff with erroneous and misleading information, and negligently omitted material information with a duty to disclose, to the Plaintiff's detriment.

85.     As a direct and proximate cause of the Defendants' negligent misrepresentations, the Plaintiff has suffered irreparable harm, and general, special, and consequential damages, including, but not limited to, loss of profits, interest, and other damages, injuries, and losses, to its detriment.

**COUNT IX - VIOLATIONS OF MASSACHUSETTS**
**CONSUMER PROTECTION ACT / M.G.L. C. 93A, §§ 2 & 11**
**(as to all Defendants)**

86.     The Plaintiff reasserts Paragraphs 1 through 85 of the Complaint, together with the **Exhibits**, and restates and incorporates them herein by reference.

87.     At all relevant times herein, the Defendants conducted a trade or business, as defined by the Massachusetts Consumer Protection Act, M.G.L. c. 93A, within the Commonwealth of Massachusetts.

88.     The conduct of the Defendants as described herein, constitutes unfair and deceptive trade practices, under Sections 2 and 11 of the Consumer Protection Act, including but not limited to claims that the Defendants:

a)      executed the Securities Purchase Agreements and the Notes with full knowledge and understanding of the Defendant's obligations to the Plaintiff;

b)      fraudulently induced the Plaintiff to invest in the Company a four additional times and thereby breached its promise to repay the Plaintiff;

c)      fraudulently concealed from the Plaintiff the full and complete financial and operational details and prospects of the Company in inducing the Plaintiff to make its investment in the Company;

d)      fraudulently induced the Plaintiff to execute the SPA's, Notes and other Transaction Documents, which require Defendant SOUM to remain a public company with timely filing of its periodic reports with the SEC, knowingly failing to file such reports and intentionally and fraudulently causing the revocation of the Defendant's registration with the Commission, to the detriment of the Plaintiff;

e)      knowingly and intentionally concealed these activities from the Plaintiff, to its detriment; and/or

f)      violated the requirements, terms and conditions of existing statutes, rules and regulations meant for the protection of the public's health, safety or welfare.

89.     As a direct and proximate cause of the Defendants' violations of the Massachusetts Consumer Protection Act, M.G.L. c. 93A, Sections 2 and 11, the Plaintiff has suffered irreparable harm, and general, special, and consequential damages, including, but not limited to, loss of profits, interest, and other damages, injuries, and losses, to its detriment.

## VI. <u>REQUESTS FOR RELIEF</u>

WHEREFORE, the Plaintiff, Auctus Fund, LLC, respectfully requests that this Honorable Court grant it the following relief:

A)  Order, grant and enter temporary, preliminary and permanent injunctive and equitable relief, and specific performance, and finding that the Plaintiff has suffered irreparable harm, has a likelihood of success on the merits, that the balance of hardships favors the Plaintiff and that it is in the public interest to grant such temporary, preliminary and permanent injunctive and equitable relief, and specific performance for the benefit of the Plaintiff, as set forth herein;

B)  Determine that the Defendants are liable for all damages, losses, and costs, as alleged herein;

C)  Determine and award the Plaintiff, Auctus Fund, LLC, the actual losses sustained by it as a result of the violations of law by the Defendants, as set forth herein;

D)  Render a judgment and decision on behalf of the Plaintiff, Auctus Fund, LLC, on all Counts of the Complaint, and issue findings of fact and rulings of law, as necessary and appropriate, that the Defendants are liable, in all respects;

E)  Order, decide, adjudge, and determine that the liability of the Defendants, is for all losses, injuries, and damages, special, consequential, general, punitive, and/or otherwise, and for all interest and costs, as alleged herein;

F)  Award the Plaintiff, Auctus Fund, LLC, its costs, including, but not limited to, filing fees, costs, expenses and interest, for being required to prosecute this action;

G)  Award the Plaintiff, Auctus Fund, LLC, its actual attorneys' fees, for being required to prosecute this action;

H)      Award the Plaintiff, Auctus Fund, LLC, multiple, double, treble, and/or punitive

damages in an amount to be determined;

I)      Enter judgment on behalf of the Plaintiff, Auctus Fund, LLC, on the Complaint;

J)      Order declaratory relief, as appropriate and as this Honorable Court deems

necessary; and/or

K)      Any additional relief which this Honorable Court deems just and proper.


**THE PLAINTIFF, AUCTUS FUND LLC,**
**<u>DEMANDS A TRIAL BY JURY ON ALL COUNTS SO TRIABLE</u>**


Respectfully Submitted,
PLAINTIFF, Auctus Fund LLC,

By its Attorneys,


　　　/s/ *Philip M. Giordano*　　　
Philip M. Giordano, Esq. (BBO No. 193530)
Sophia E. Kyziridis, Esq. (BBO No. 703590)
Giordano & Company, P.C.
REED & GIORDANO, P.A.
47 Winter Street, Suite 800
Boston, Massachusetts 02108-4774
Telephone: (617) 723-7755
Facsimile: (617) 723-7756
Email: pgiordano@reedgiordano.com
Dated: February 20, 2020      Email: skyziridis@reedgiordano.com